United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ALEXANDER ALPER,

        Plaintiff,

    v

JO ANNE B BARNHART,
Commissioner of Social Security,

        Defendant.
_____/

No 03-2480 VRW

ORDER

        This social security appeal under 42 USC § 405(g) presents the issue whether, under the Social Security Administration's (SSA's) regulation at 20 CFR § 416.1130(b), an arrangement in which unrelated co-tenants share an apartment's market-rate rent unevenly between them constitutes a grant of in-kind support and maintenance (ISM) income by the tenant who pays more in favor of the tenant who pays less. Plaintiff's disabled status is not at issue.

        Plaintiff Alexander Alper appeals a decision by the SSA's Appeals Council holding that because his rent-sharing agreement with his roommate is not a "business arrangement," he is deemed to receive ISM income equaling the difference between half of the total

rent and his actual contribution. The financial impact of the decision was a reduction of approximately $200 per month in plaintiff's supplemental security income (SSI) benefits. Administrative Record (AR) Doc #20 at 5-6, 30. The parties have filed cross-motions for summary judgment. Doc ## 22, 23.

I

Plaintiff, a disabled Russian immigrant, knew Sofya Akselrud in Moscow before they both immigrated to the United States. AR 27. The two did not initially keep in touch after moving to the United States. Id. When plaintiff first immigrated from Russia, he lived in California with his mother and brother. AR at 65. After they both died, plaintiff decided to leave California. Meeting Akselrud again during a visit to New York, he decided to move in with her. AR 27. Plaintiff could not otherwise afford the expensive housing in New York and Akselrud was reportedly "satisfied" with the arrangement. Id. While in New York, plaintiff paid less than half of the total rent —— $450 out of $1050 in total rent —— but paid for his share of utilities and his own food, clothing and other expenses. AR 65-66. In New York, he received a full award of SSI benefits. AR 66.

In May 2002, plaintiff and Akselrud both moved to California and after a search, rented a one-bedroom apartment in San Jose from AvalonBay Communities, Inc (AvalonBay). Id. The lease required that all persons eighteen years of age or older who would be residing at the apartment be listed and sign the lease. AR 41. Both plaintiff and Akselrud signed the lease, thus becoming jointly and severally liable for the rent. AR 41-43. The total rent was

2

$1405, out of which plaintiff paid $500 to the landlord and Akselrud $905. AR 15, 38, 41. Plaintiff also paid about $50 toward utilities. AR 28, 38, 47. Plaintiff paid for his own food, clothing and other expenses. AR 38. Plaintiff and Akselrud did not have a "formal agreement" between them. AR 26.

On June 24, 2002, plaintiff filed with the SSA a statement to determine continuing eligibility for SSI payments in which he stated that he lived in an apartment, shared a household with his non-relative roommate and paid $500 of the monthly rent of $1405 and $50 toward utilities. AR 37-38. He also stated that he bought his own food separately from Akselrud. Id. Based on this statement, the SSA determined that plaintiff was receiving ISM income from Akselrud and reduced his monthly SSI benefit from $750.00 to $568.34. AR 12. Plaintiff timely requested reconsideration, AR 47, but the SSA affirmed its decision to reduce benefits. AR at 58. Plaintiff then made a timely request for a hearing before an administrative law judge (ALJ). AR 63.

The ALJ held a hearing on December 11, 2002 at which plaintiff appeared with his attorney and a translator. AR 23. At the hearing, plaintiff testified that he and Akselrud decided to continue living together in California because "she couldn't find the apartment —— any housing cheaper," AR 28, that he and Akselrud had been unable to afford a two-bedroom apartment and instead decided to rent a one-bedroom apartment for which Akselrud would pay $900 and plaintiff would pay $500. AR 26. Plaintiff testified that while they were both satisfied with the arrangement, he would prefer cheaper subsidized housing and was trying to obtain it. AR 29-30. Plaintiff further testified that Akselrud paid the water bill while

3

he paid the electricity bill, and that he paid for his own food and clothing. AR 28.

On January 30, 2003, the ALJ issued a favorable decision finding that a "business arrangement" within the meaning of 20 CFR § 416.1130(b) existed between plaintiff and Akselrud and that plaintiff was therefore not receiving ISM income from his roommate. AR 16. Relying on dictionary definitions of the term "business," ALJ found that a "business arrangement" existed because "[w]hen two or more people make an arrangement for housing to their mutual financial advantage, they are clearly engaging in 'activity for gain, benefit, or advantage,'" –– that is, business –– and the living arrangement was "an agreement mutually advantageous to both." AR 13. The ALJ commented that the regulations' explanation of when a "business arrangement" exists was "straightforward" and did not require that rent be paid in equal shares or impose other burdens not specifically stated, only that "the amount of monthly rent required to be paid equals the current market rental value." AR 13.

The ALJ further commented that "SSA living arrangement determinations often appear to rely on an invalid perception or interpretation of the law," often mandating pro rata share requirements that appear "arbitrary and without legal authority." AR 14. The ALJ reasoned that a pragmatic approach was instead necessary to carry out the purposes of Title XVI:

> Financial reality should be the principal consideration in making determinations about living arrangements. Individuals attempting to live on an SSI budget must make creative arrangements for housing and other essentials. There is nothing in the record which indicates that the claimant and Ms Akselrud did not engage in an arms-length negotiation regarding housing and arrive at the bargain described. That this arrangement is a

4

> hybrid requiring Mr Alper to pay what amounts to a lesser portion of the monthly rent does not negate the fact that he is paying a flat fee for room. This business arrangement requires that the claimant pay a not insubstantial amount for room and an additional amount for other expenses. Moreover, the amount paid by Mr Alper ($500 monthly) is similar to what an individual might pay to rent a room in the area.

AR 14. In support of the latter finding, the ALJ relied on the classified advertisements in the local San Jose newspaper. AR 16. The ALJ determined that the SSA's approach was not consistent with the statute or its regulations:

> Had Congress intended to impose an onerous burden of proof on claimants who have made arrangements to secure affordable housing, it would have stated this intent in the statute * * *. Nor is there any part of the law or regulations supporting the notion that individuals not fortunate enough to find lodging in low-income housing should be deprived of a portion of their meager SSI payment because the housing arrangements they have made are perceived as not meeting some POMS guideline or 'policy' statement.

AR 15. The ALJ concluded that plaintiff's living arrangement fell within the business arrangement criteria of 20 CFR § 416.1130(b) and ordered his benefits revised accordingly. Id.

In response to a memorandum from the San Francisco regional office on March 25, 2003, the SSA's Appeals Council elected to review the ALJ's decision. AR 5. In a brief decision dated May 12, 2003, the Appeals Council concluded that the ALJ had applied 20 CFR § 416.1130(b) incorrectly. Id. The Appeals Council set forth its reasoning thusly:

> [t]he record does not indicate that the claimant is renting a room from Sofya Akselrud in her apartment under a business arrangement, or under any other arrangement, or that the claimant is paying her any rent. Rather, the record establishes that the claimant and Ms Akselrud are joint tenants in an apartment owned by AvalonBay Communities, Inc. * * *

> Presumably, [the monthly rent] equals the current market value of the apartment. Thus the claimant * * * has a "business arrangement" only with AvalonBay Communities, Inc., and receives no in-kind support and maintenance from AvalonBay Communities. [sic] Inc. in accordance with 20 CFR 416.1130(b).

AR 5-6. The Appeals Council next discredited the plaintiff's assertion that he paid a portion of the utilities, stating that there was "no evidence corroborating" such payments. AR 6. Accordingly, the Appeals Council then reasoned that "the claimant's portion of the household shelter costs [rent plus utilities] is $727.50 per month ($1455.00 divided by 2) and the record documents that he pays only $500.00 per month, * * * the difference, $227.50, is in-kind support and maintenance" from Ms Akselrud. AR 6. The Appeals Council ordered plaintiff's benefits reduced the maximum monthly amount allowed under 20 CFR 416.1140 —— $201.66 for 2002 and $204.00 for 2003.

Plaintiff filed this timely appeal seeking judicial review of the Appeals Council's decision.

II

Under 42 USC § 405(g), a decision to deny benefits may be overturned if the decision is not supported by substantial evidence or if the decision is based on legal error. Thomas v Barnhart, 278 F3d 947, 954 (9th Cir 2002). "Substantial evidence means more than a scintilla but less than a preponderance." Id. "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Id. The Appeals Council's decision constitutes the

\\

1 SSA's final decision and is the sole subject of review on this
2 appeal.  <u>Taylor v Heckler</u>, 765 F2d 872, 875 (9th Cir 1985).

3      Under Title XVI of the Social Security Act, blind, aged
4 or disabled individuals are eligible to receive SSI benefits based
5 on need, as determined from each individual's total income.  See 42
6 USC § 1381(a).  "Income" is defined as anything that a recipient
7 receives in cash or in kind that can be used to meet the
8 recipient's needs for food, clothing and shelter.  20 CFR §
9 416.1102.  The regulation defines ISM as

> any food or shelter that is given to you or that you
> receive because someone else pays for it.  Shelter
> includes room, rent, mortgage payments, real
> property taxes, heating fuel, gas, electricity,
> water, sewerage, and garbage collection services.

20 CFR § 416.1130(b).  Section 416.1130(b) further states that a
recipient is not receiving ISM income in the form of rent if the
recipient is "paying the amount charged under a business
arrangement."  A "business arrangement" exists where the amount of
monthly rent required to be paid "equals the current market rental
value" of the recipient's accommodations.  See § 416.1130(b).  The
regulations define "current market value" as "the price of an item
on the open market in your locality."  20 CFR § 416.1101.

     In nearly all federal judicial circuits including the
Ninth, 20 CFR § 416.1130(b) provides that if the SSI recipient's
actual rent is not equivalent to the current market rental value of
his accommodations, there is no "business arrangement" and the
recipient is deemed to be receiving ISM income in the form of rent.
(Under an alternate rule applicable only in the Seventh Circuit, if
the amount of rent the recipient is required to pay is not
equivalent to the presumed maximum value of the accommodations,

there is no "business arrangement.")  Once a recipient is found to be receiving ISM income, the regulations require determination of whether the recipient resides in his own household or the household of another and benefits are reduced accordingly.  20 CFR § 1130(c). If the recipient is determined to be living in the household of another who provides the beneficiary with food and shelter, benefits are reduced by one-third.  Id.  If the recipient lives in his own household, the "presumed value rule" requires a reduction of at a presumed "maximum value" of benefits according to a specific formula; the claimant may seek exemption from the presumed value rule by presenting evidence that the value of ISM received is lower than the presumed value.  20 CFR § 416.1140.

### III

Plaintiff challenges the Appeals Council's decision that he was not paying rent pursuant to a "business arrangement," arguing that (1) the Appeals Council's factual finding of no "business arrangement" was not supported by substantial evidence; or, alternatively (2) the Appeals Council interpreted the regulation's use of the term "business arrangement" in a manner contrary to the governing statute.  Pl Reply (Doc #25) at 2-3.

Federal courts generally defer to an agency's reasonable interpretation of its statute and regulations.  <u>Campbell ex rel Campbell v Apfel</u>, 177 F3d 890, 893 (9th Cir 1999); <u>Chevron USA, Inc v Natural Resources Defense Council, Inc</u>, 467 US 837, 842 (1984). "[P]rovided an agency's interpretation of its own regulations does not violate the Constitution or a federal statute, it must be given 'controlling weight unless it is plainly erroneous or inconsistent

8

with the regulation.'" <u>Stinson v United States</u>, 508 US 36, 45 (1993)(quoting <u>Bowles v Seminole Rock & Sand Co</u>., 325 US 410, 414 (1945)).  This deference does not, however, amount to a judicial rubber-stamp of the agency's interpretation.

The existing jurisprudence around 20 CFR § 416.1130(b) interprets whether an SSI recipient is receiving ISM income in one of two factual scenarios not present in this case.  One category of cases considers whether the difference between the market-rate rent and the rent actually charged to an SSI recipient by a landlord who is a relative constitutes ISM income.  See <u>Antoniolli v Harris</u>,624 F2d 78 (9th Cir 1980)(difference between property taxes paid by SSI recipient on behalf of landlord-relative and market rate rent for the dwellings deemed ISM income); <u>Jackson v Schweiker</u>, 683 F2d 1076 (7th Cir 1982)("business arrangement" found between claimant and landlord-relative when rent charged equaled such a large percentage of federal benefits the claimant derived no "actual economic benefit" by the arrangement); <u>Ruppert v Bowen</u>, 871 F2d 1172 (2d Cir 1989)(adopting the <u>Jackson</u> "actual economic benefit" analysis in like factual scenario); <u>Ragsdale v Apfel</u>, 999 F Supp 814 (EDVA 1998) (applying the <u>Jackson</u> "actual economic benefit" test to find married SSI recipients not receiving ISM from their landlord-son when the difference between the market-rate rent and rent actually paid provided the SSI recipients with no actual economic benefit).

The second category of cases applying 20 CFR § 416.1130(b) considers whether payment of a portion of a SSI recipient's market rate rent by a third party who is not a co-tenant constitutes ISM income.  See <u>Ellis v Apfel</u>, 147 F3d 139 (2d Cir 1998)(no "business arrangement" found where an unrelated third

1 party not living on the premises or obliged to pay rent paid a
2 portion of the SSI recipient's rent); <u>Hecht v Barnhart</u>, 217 F Supp
3 2d 356 (EDNY 2002)(disbursements from SSI recipient's Supplemental
4 Needs Trust to pay room and board constituted ISM); but see
5 <u>Beckless v Chater</u>, 909 F Supp 575 (ND Ill 1995)(third party's
6 partial payment of market-value rent was not ISM where the amount
7 of rent paid by the SSI recipient exceeded the presumed maximum
8 value of the apartment).

9      The court has found no published opinion addressing 20
10 CFR § 416.1130(b)'s applicability where, as here, unrelated co-
11 tenants have agreed to split a market rate rent unevenly between
12 them.  For the reasons stated below, the court concludes after
13 careful review that the Appeals Council's interpretation of 20 CFR
14 § 416.1130(b) is clearly erroneous and requires remand to correct
15 an interpretation that imposes additional burdens on claimants that
16 are not explicitly or implicitly required by the regulation and are
17 contrary to the intent of Title XVI of the Social Security Act.

18      First, the Appeals Council interpreted the "business
19 arrangement" exception to § 416.1130(b) as potentially existing
20 only between a claimant and a landlord or other entity to whom the
21 claimant pays rent.  It found that, because plaintiff "and Ms
22 Akselrud are joint tenants in an apartment owned by AvalonBay" and
23 the amount of rent paid "equals the current market value of the
24 apartment," plaintiff has a "business arrangement" only with
25 AvalonBay.  AR 5-6.  The logical underpinning of this syllogism is
26 not apparent to the court.

27      Second, the Appeals Council decision concluded that
28 plaintiff was receiving ISM because he paid less than half of the

**10**

total household expenses.  This conclusion rested on the implicit assumption that if two people inhabit the same apartment, the current market value of each individual's shelter can only be exactly half of the total rent.  Based on its finding that "the claimant's portion of the household shelter costs is $727.50 per month ($1455.00 divided by 2) and the record documents that he paid only $500 per month  * * *  the difference, $227.50, is in-kind support and maintenance under 20 CFR 416.1121(h) and 416.1141 that the claimant receives from Ms Akselrud," AR 6, the Appeals Council found that the roommates' decision to divide their market-rate rent unevenly between them necessarily negated the applicability of the "business arrangement" exception.  For the reasons stated below, the court finds this interpretation of the regulation to be plainly erroneous.

Third, when computing the amount of ISM plaintiff was deemed to have received from Akselrud, the Appeals Council appears to have first computed all of plaintiff's "shelter" costs as defined in § 416.1130(b) as part of its determination that a "business arrangement" existed.  The plain language of the regulation, however, asks whether the <u>rent</u> paid is equal to the current market rental value.  See 416.1130(b).  Whether the plaintiff pays an equal share of utilities, while relevant to other statutory inquiries (see, for example, § 416.1133(c) (including utilities within the definition of household operating expenses)), is irrelevant to the question whether, pursuant to the rent-sharing agreement, plaintiff is paying market-rate rent.  The Appeals Council erred by including utilities in its analysis whether plaintiff paid rent pursuant to a business arrangement.

11

In its decision, the Appeals Council acknowledged that the total rent paid in this case is the "current market value." The remaining —— and as yet unanswered —— question is whether the amount of rent the plaintiff paid pursuant to his agreement with Akselrud equals the current market rental value of his individual accommodations within the apartment.

Returning to the question of allocating shared rent, the court finds error in the Appeals Council's implicit legal conclusion that the "current market rental value" of each resident's individual accommodations within a shared apartment is determined by dividing the total rent for the apartment by the total number of residents.  Essentially, the Appeals Council wrote a new, unwarranted requirement into the regulation:  that co-tenants must divide rent equally or the one paying less will be deemed to be receiving ISM income.  When determining whether a recipient is receiving ISM income within the meaning of § 416.1130(b), the relevant inquiry is whether the individual is paying rent equivalent to "current market rental value."  The regulations define the "current market rental value" not as a pro rata share of total household expenses, but as "the price of an item on the open market in your locality."  20 CFR § 416.1101.

In addition to contradicting the regulation's definition of the term, the Appeals Council's assumption that the current market rental value can automatically be equated with the pro rata share of the total household expenses ignores the reality that separate accommodations, even within the same apartment, are often unequal, and as such have differing market values.  As plaintiff points out, it is not uncommon for roommates to pay different rents

**12**

in acknowledgment of the superiority of one room's view, the fact that one room has its own bathroom or that one room is bigger than the other.

The facts of the instant case illustrate the error of the Appeals Council's assumption. Plaintiff and Akselrud share a one-bedroom apartment. AR at 26. They are not married and there is no indication in the record that they share the apartment's one bedroom. It is therefore logical to assume that one roommate's living situation is inferior to the other's; perhaps one resides in the bedroom and the other on a couch, and the respective rents paid by each reflects this. Unfortunately, no factual record was developed to enable such an inquiry. But neither does the record suggest, however, that Akselrud had any motivation to bestow significant financial gifts on plaintiff. Unlike the factual scenarios in most of the above-cited cases discussing 20 CFR § 416.1130(b), plaintiff and Akselrud are unrelated. Moreover, plaintiff's testimony at the hearing stating that he had applied for several subsidized housing situations (AR at 29-30) suggests that financial considerations predominated in plaintiff's and Akselrud's decision to share habitations. This scant evidence in the record points more strongly to the conclusion that plaintiff is paying the current market rental value of his accommodation than that Akselrud is subsidizing his housing. There is no evidence in the record supporting the Appeals Council's assumption that the rent paid by plaintiff is not "the current market value" of the accommodations that he rents; rather, the Appeals Council applied an unwarranted presumption that awkwardly stood in for the missing substantial evidence necessary to support its decision.

13

Nor does the Appeals Council's decision comport with the aims of Title XVI. The Ninth Circuit upheld the SSA's ISM regulation as "reasonably related to the purposes of the enabling legislation," Title XVI, because they tend to "equalize the status of SSI recipients who live in quarters owned by friends or relatives, paying little or no rent, and those who must obtain housing in the marketplace." Antoniolli, 624 F2d 78 (9th Cir 1980). The controlling factor underlying the court's opinion, however, was fairness to participants in the program. In the instant case, the SSA appears, contrary to the intent of Title XVI, to have placed its own administrative convenience ahead of fairness to SSI recipients.

What the Appeals Council has done is to adopt a short-cut to determining the existence of ISM income that both works to the disadvantage of SSI recipients and avoids making the inquiry as required by the regulation into whether the claimant's rent fairly represents the "current market rental value" of the claimant's accommodation. This short-cut is supported neither by substantial evidence in the record nor by the plain language of the regulations and their enabling statute. Unless the SSA determines that plaintiff's smaller portion of the rent paid on his shared accommodation is less than the "current market rental value" of his individual accommodations, the SSA may not deem the discrepancy to be ISM income.

IV

The record does not make it possible to make a finding regarding the dispositive issue on this appeal: whether the rent

**14**

paid by plaintiff pursuant to his agreement with Akselrud reflected the current market value of his individual accommodations. The ALJ's finding that $500 per month was consistent with listings in the local paper advertising rooms for rent (AR 16) is helpful, but does not constitute substantial evidence in the record.

If further development of the record discloses that plaintiff's rent payment reflected the current market value of his accommodations, then the SSA must conclude that plaintiff was "paying the amount charged under a business arrangement" with Akselrud within the meaning of 20 CFR § 416.1130(b) and must restore the withheld benefits. If not, then some portion of the discrepancy may be considered ISM and deducted from plaintiff's benefits. In neither event is it appropriate for the SSA for mere reasons of convenience to presume, without the support of substantial evidence in the record, that the fair market value of an individual claimant's share of a shared accommodation is an equal portion of the total rent.

This matter is remanded to the SSA for further proceedings in accordance with this decision. The clerk is directed to close the file and terminate all pending motions.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge